# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| NATIONAL CASUALTY COMPANY<br><br>*Plaintiff*,<br><br>v.<br><br>EQUINOX HOLDINGS, INC., JOSEPH JULIAN GIL, KALYN JAMES, and RICO JAMES,<br><br>*Defendants*. | CASE NO. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, National Casualty Company ("National Casualty"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57, hereby seeks Declaratory Judgment against Defendants, Equinox Holdings, Inc., Joseph Julian Gil, Kalyn James, and Rico James (collectively, "Defendants"), for purposes of determining a question of actual, immediate controversy between the parties. National Casualty respectfully shows the Court as follows:

## PARTIES

1. National Casualty is and at all times pertinent hereto has been a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Scottsdale, Arizona. National Casualty is eligible to transact insurance business in the State of Florida pursuant to the Florida Surplus Lines Law, Section 626.912, Fla. Stat., et seq.

2

2. Upon information and belief, Defendant Equinox Holdings, Inc. ("Equinox") is and at all times pertinent hereto has been a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York. Equinox may be served with process at 155 Office Plaza Drive, 1st Floor, Tallahassee, Florida 32301 through its registered agent, Paracorp Incorporated.

3. Upon information and belief, Defendant Joseph Julian Gil ("Gil") is and at all times pertinent hereto has been a citizen of the State of Florida who resides in Miami-Dade County, Florida. Gil may be served with process at 6921 Loch Ness Drive, Miami Lakes, Florida 33014.

4. Upon information and belief, Defendant Kalyn James ("Mrs. James") and Defendant Rico James ("Mr. James"), who are wife and husband, are and at all times pertinent hereto have been citizens of the State of Florida who reside in Miami-Dade County. Mrs. James and Mr. James may be served with process at 570 NE 70th Street, Miami, Florida 33138.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the Plaintiff and the Defendants and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest, attorneys' fees, and costs.

6. Venue is proper in the United States District Court for the Southern District of Florida because all or a substantial part of the events giving rise to the claims asserted below occurred within this judicial district.

## NATURE OF CLAIM

7. This is an action for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57 for the purpose of construing and interpreting the terms of an

insurance policy and for a determination of the rights and obligations, if any, of the parties arising from an insurance policy issued by National Casualty to Equinox.

8. An actual, present and existing controversy exists among the parties to this lawsuit regarding whether National Casualty has a duty to indemnify Gil under the insurance policy issued to Equinox with respect to a Final Consent Judgment entered in a lawsuit styled *Kalyn James and Rico James v. Joseph Julian Gil, Boston Atlantic Capital Group, LLC, and Equinox Holdings, Inc.*, case number 2020-011250-CA-01 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Underlying Lawsuit"). A copy of the Complaint filed in the Underlying Lawsuit is attached as **Exhibit 1**.

## FACTUAL BACKGROUND

9. On May 27, 2020, Mrs. James and Mr. James (together, the "Underlying Plaintiffs") filed the Underlying Lawsuit against Equinox, Gil, and Boston Atlantic Capital Group, LLC ("Boston"). The Underlying Plaintiffs claim that Equinox owns and operates a health club located at 25 SW 9th Street in Miami, Florida and that Gil was Equinox's "agent and/or employee." In the Underlying Complaint, the Underlying Plaintiffs claim that Mrs. James was a "business invitee and patron" at the health club.

10. Upon information and belief, both Gil and Mrs. James were employees of Equinox at all times material to this Complaint. Upon information and belief, Mrs. James's received treatment for her alleged injuries, as are described more thoroughly below, through Workers' Compensation benefits.

11. In the Underlying Lawsuit, the Underlying Plaintiffs allege that on July 23, 2018, Gil, acting in the course and scope of his employment with Equinox, gave Mrs. James a massage

at Equinox's health club on a Sierra Comfort massage table.  According to the Underlying Lawsuit, Gil "caused the Sierra Comfort massage table to collapse and injure [Mrs. James] by raising her legs as part of the massage placing her weight onto one end of the table."

12. In the Underlying Lawsuit, the Underlying Plaintiffs claim that the Sierra Comfort massage table "was equipped with foldable legs that were prone to collapse" due to various safety-related failures on the part of Boston, which the Underlying Plaintiffs claim is the table's designer, manufacturer, and/or distributor, and that "[t]he massage table failure occurred during normal, intended use and operation of the massage table without warning to [Mrs. James] or [Gil]."  The Underlying Plaintiffs also claim that Equinox and Gil "knew or through reasonable inspections should have known that the massage table's foldable legs were prone to collapse."

13. With respect to Gil, the Underlying Plaintiffs allege in the Underlying Lawsuit that Gil "failed to use reasonable care in providing a massage"; "injured to [Mrs. James] [sic]"; "failed to use reasonable judgment to warn [Mrs. James] about the possibility of the massage table collapsing during the massage"; and "failed to warn [Mrs. James] about the dangers associated with collapse of the massage table."  With respect to Equinox, the Underlying Plaintiffs allege in the Underlying Lawsuit that Equinox failed to "[k]eep its premises in a reasonably safe condition;" "[r]easonably maintain, inspect and/or correct dangerous conditions on its premises;" "[i]mplement reasonable and appropriate methods of operations, inspection and maintenance to ensure that its premises are reasonably safe for business invitees including [Mrs. James];" and "[r]easonably and appropriately warn [Mrs. James] of the dangerous conditions on its premises."  The Underlying Lawsuit asserts causes of action against both Equinox and Gil for negligence and loss of consortium.

14. In the Underlying Lawsuit, Mrs. James claims she suffered "bodily injury, pain and suffering, disability or physical impairment, disfigurement, mental anguish, loss of earnings, inconvenience, and loss of capacity for the enjoyment of life" due to the above-referenced incident and Mr. James claims he "lost the services, society, attentions, companionship and consortium of [Mrs. James] and has incurred the responsibility of paying for her medical expenses and care." The Underlying Plaintiffs seek damages, costs, and interest for their alleged injuries.

15. Upon information and belief, Equinox was served with the Underlying Lawsuit on July 20, 2020 and answered the Underlying Lawsuit, through counsel, on April 5, 2021.

16. Upon information and belief, Gil was served with the Underlying Lawsuit on June 17, 2020. Upon information and belief, the Underlying Plaintiffs filed a Motion for Clerk's Default against Gil on July 9, 2020, but Default Judgment was not entered against Gil. Upon information and belief, Gil has not answered or otherwise responded to the Underlying Lawsuit and no counsel has appeared for Gil in the Underlying Lawsuit.

17. Neither Equinox nor Gil tendered or otherwise advised National Casualty of the Underlying Lawsuit.

18. On August 13, 2021, the Underlying Plaintiffs, through counsel, sent two letters (the "Insurance Disclosure Letters") to K&K Insurance Group ("K&K"), National Casualty's claim administrator. In the Insurance Disclosure Letters, the Underlying Plaintiffs state that they "understand that your company provides liability insurance coverage to the insured(s) named above, who are potential defendants in an action for damages" arising out of a July 23, 2018 "accident" involving Mrs. James. One of the Insurance Disclosure Letters names Equinox as the "insured" and "potential defendant" and the other Insurance Disclosure Letter names Gil as the

5

"insured" and "potential defendant." Both Insurance Disclosure Letters make an insurance disclosure request pursuant to Florida Statute § 627.4137. Copies of both August 13, 2021 Insurance Disclosure Letters are attached as **Exhibits 2** and **3**.

19. The August 13, 2021 Insurance Disclosure Letters were National Casualty's first notice that Mrs. James is asserting a claim arising out of a July 23, 2018 "accident." The Insurance Disclosure Letters did not advise National Casualty of the factual allegations of Mrs. James's claim, nor did they advise National Casualty that the Underlying Lawsuit was filed on May 27, 2020, over a year prior to the date of the Insurance Disclosure Letters. Likewise, the August 13, 2021 Insurance Disclosure Letters did not advise National Casualty that Equinox and Gil were named as defendants in the Underlying Lawsuit on May 27, 2020 and were served with the Underlying Lawsuit on July 30, 2020 and June 17, 2020, respectively; rather, the Insurance Disclosure Letters referred to Equinox and Gil as "potential defendants."

20. On August 26, 2021, National Casualty, through K&K, responded to the August 13, 2021 Insurance Disclosure Letter relative to Equinox and on September 9, 2021, National Casualty, through K&K, responded to the August 13, 2021 Insurance Disclosure Letter relative to Gil based on the limited factual information made available to it at the time. National Casualty's August 26, 2021 and September 9, 2021 response letters are attached as **Exhibits 4** and **5**.

21. On September 16, 2021, and unbeknownst to National Casualty, the Underlying Plaintiffs filed a Notice of Filing Stipulation for Entry of Consent Judgment in the Underlying Lawsuit. The Notice encloses a Stipulation for Entry of Consent Judgment, which is stated to be "stipulate[d] and agree[d]" to by Gil, "by and through his attorneys," and the Underlying Plaintiffs, "by and through their attorneys." The Stipulation for Entry of Consent Judgment purports to be

electronically signed by Gil and the Underlying Plaintiffs. The Notice of Filing Stipulation for Entry of Consent Judgment, along with the enclosed the Stipulation for Entry of Consent Judgment, are attached as **Exhibit 6**.

22. The filed Stipulation for Entry of Consent Judgment states that "[Gil] admits that [Gil] is liable for the injuries sustained by [the Underlying Plaintiffs] as alleged in the [Underlying Lawsuit]" and that "[the Underlying Plaintiffs'] injuries are such that the reasonable value of [Mrs. James's] damage is Seven Hundred Fifty Thousand Dollars ($750,000.00)." The filed Stipulation for Entry of Consent Judgment also states "[t]hat the parties do hereby agree that in light of the undisputed issues concerning liability and damages reasonably and proximately caused thereby, that it is in their mutual interests to forego the expense and uncertainty of costly litigation and enter into a reasonable good faith settlement" and that "[t]his Stipulation, the Final Consent Judgment, and the Assignment shall affect a full settlement between [Gil] and [the Underlying Plaintiffs] as to all claims which have been raised or could have been raised in [the Underlying Lawsuit]."

23. The filed Stipulation for Entry of Final Judgment further states, in part, as follows:

- "[Gil] shall immediately upon execution of this Stipulation and entry of the Consent Judgment, execute in favor of [the Underlying Plaintiffs] an assignment of all of its rights, actions, cause of action, choses in action, remedies and rights against [Equinox] and [K&K] . . ." and "[the Underlying Plaintiffs] will pursue the assigned causes of action as their exclusive remedy in satisfaction of the Consent Judgment."

- "[Gil] will cooperate with [the Underlying Plaintiffs] as may be necessary in the prosecution of said action by [the Underlying Plaintiffs] against [Equinox] and [K&K]."

- "After the execution of this Stipulation, after the entry of the Consent Judgment to be entered pursuant to this Stipulation, and after the assignment and transfer agreement is executed assigning all rights [Gil] has pursuant to their contract of indemnity with [Equinox] and pursuant to the insurance policy issued by [K&K] as respects operations of [Gil], the [Underlying Plaintiffs] agree that they may satisfy the Consent Judgment only as set forth in the terms of this Stipulation for Entry of Consent Judgment, and shall not seek to execute on this Judgment against [Gil]."

24. On September 17, 2021, the Final Consent Judgment was entered in favor of the Underlying Plaintiffs against Gil in the amount of $750,000.00. The Final Consent Judgment refers to a "Stipulation of Entry of Consent Judgment dated the 4th day of August 2021." The Final Consent Judgment is attached as **Exhibit 7**.

25. Neither Equinox nor Gil notified National Casualty of the Stipulation for Entry of Final Judgment or the Final Consent Judgment.

26. On October 26, 2021, the Underlying Plaintiffs, through counsel, wrote to National Casualty and demanded payment "to satisfy the judgment against [National Casualty's] insured" "[p]ursuant to Fla. Stat. 624.427." The October 26, 2021 Demand Letter enclosed the Final Consent Judgment against Gil, as well as National Casualty's September 9, 2021 response to the Insurance Disclosure Letter relative to Gil. The October 26, 2021 Demand Letter is attached as **Exhibit 8**.

27. On November 3, 2021, the Underlying Plaintiffs, through counsel, again wrote to National Casualty and demanded payment "to satisfy the judgment against [National Casualty's] insured" "[p]ursuant to Fla. Stat. 624.427." Upon information and belief, the November 3, 2021

Demand Letter was intended to correct a typographical error in the October 26, 2021 Demand Letter, which mistakenly identified Gil as the Underlying Plaintiffs' counsel's client and Equinox as National Casualty's insured. A copy of the November 3, 2021 Demand Letter is attached as **Exhibit 9**.

## THE POLICY

28. National Casualty issued Policy No. KKO000002117100 (the "Policy") to Equinox. The Policy affords Commercial General Liability coverage (among other coverages) to insureds thereunder for the period September 15, 2017 to September 15, 2018, subject to certain terms, conditions, limitations, and exclusions. A copy of the Policy is attached as **Exhibit 10**.

29. The Policy's Commercial General Liability Coverage Form states that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy" and "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured."

30. The Policy's first Named Insured is "Equinox Holdings, Inc." In addition, the Policy's Declaration Extensions, Form KR-SP-1, lists the Policy's other Named Insureds as "Equinox Hotel Management, LLC," "Furthermore, LLC," and "any business entity incorporated or organized under the laws of the United States of America (including any state thereof), its territories or possessions or Canada (including any province thereof) in which the Named Insured shown in the Declarations owns, during the policy period, an interest of more than 50 percent."

31. The Policy's Commercial General Liability Coverage Part Section II – Who Is An Insured provides, in part, that:

Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture, or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

32. The Policy defines "volunteer worker" to mean "a person who is not your 'employee', and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you."  The Policy defines "employee" to "include[] a 'leased worker'" but not a "temporary worker."  The Policy defines a "leased worker" to mean "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business."  The Policy defines a "temporary worker" to mean "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short term workload conditions."

33. The Policy's Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability provides, in pertinent part, that National Casualty "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."  By Endorsement, the Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright, humiliation, emotional distress or death resulting from bodily injury, sickness or disease."

34. Coverage A's Insuring Agreement further requires that such "'bodily injury' . . . is caused by an 'occurrence.'" The Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

35. Coverage A is subject to Exclusion a., Expected Or Intended Injury, which excludes coverage for "'[b]odily injury' . . . expected or intended from the standpoint of the insured . . . ."

36. Coverage A is subject to Exclusion b., Contractual Liability, which excludes coverage for "'[b]odily injury' . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

37. Coverage A is subject to Exclusion d., Workers' Compensation And Similar Laws, which excludes coverage for "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law."

38. Coverage A is subject to Exclusion e., Employer's Liability, which excludes coverage for:

> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
>   (a) Employment by the insured; or
>
>   (b) Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

39. The Policy is subject to an Endorsement entitled "Deletion—Co-Employee Exclusion," Form KR-GL-36 (04-07), which states that Exclusion e., Employer's Liability "is deleted if 'bodily injury' to an 'employee'; (1) [a]rises out of an action or omission of a fellow 'employee;' and (2) [a]rises out of the fellow 'employee's' employment or while performing duties related to the conduct of your business."

40. The Policy is subject to an Endorsement entitled "Exclusion – Designated Professional Services," which states that "[w]ith respect to any professional services shown in the Schedule, . . . [t]his insurance does not apply to 'bodily injury' . . . due to the rendering of or failure to render any professional service." The "exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' . . . involved the rendering of or failure to render any professional service." The Endorsement's Scheduled Professional Services are:

> Professional services shall mean services described below when performed by you or your employees.
>
> Description Of Professional Services
>
> 1. Those performed by a physician, except (a) the taking of physical measurements and blood pressure and (b) providing advise on diet or exercise;
>
> 2. Those performed by a nurse, except (a) the taking of physical measurements and blood pressure, and (b) providing child care on the insured premises, (c) electrolysis;
>
> 3. Those performed by a chiropractor;
>
> 4. Those related to psychiatric treatment;
>
> 5. Those related to acupuncture;

6. Those related to ear piercing;

7. Those related to the performance of medical diagnostic or testing services which involve, or serve as a prerequisite to, examination of bodily fluids or tissue;

8. Those related to the prescription or dispensing of medications or drugs or stimulants except for the dispensing of those items generally found in a first aid kit such as over the counter pain-relievers or wound ointments, etc.

41. The Policy is subject to an endorsement entitled "Self-Insured Retention Endorsement," Form KR-GL-67 (4-07), which provides, in part, as follows:

> AGREEMENT: Such insurance is as afforded by this policy shall apply in excess of the Self-Insured Retention as stated below:
>
> SELF-INSURED RETENTION: The words "Self-Insured Retention" shall mean the amount of loss which the Insured shall pay first from claims otherwise covered under the policy. Such Self-Insured Retention shall be primary or underlying to such insurance as is afforded by this policy. The insured shall pay 100% of such Self-Insured Retention before this policy applies.
>
> SELF-INSURED RETENTION
>
> _____ Each Claim
>
> \_\_\_\_\_$250,000.00_____ Each Occurrence
>
> _____ Aggregate
>
> _____ Maintenance
>
> \*   \*   \*
>
> If the Self-Insured Retention applies to each "occurrence," the Insured shall be responsible for and pay up to that retention all damages for which the Insured is liable in all claims and/or "suits" arising from one "occurrence," regardless of the number of persons or companies making such claim(s) or properties sustaining such damages.

42. The Self-Insured Retention Endorsement also states as follows:

> [National Casualty] shall have no obligation to participate in or to assume charge of the investigation, defense, or settlement of any claims made, or "suits" brought or proceedings instituted against the Insured unless the retention of the Insured has been paid; but [National Casualty] shall have the right and be given the opportunity to associate with the Insured and the Insured's defense counsel in defense and control of any claim, "suit," or proceeding relative to any "occurrence" which, in the opinion of [National Casualty], may involve liability on the part of [National Casualty] under the terms of this policy. In the event of the actual or probable exhaustion or reduction of the Self-Insured Retention, [National Casualty], at its sole discretion, may elect to assume control and defense of any or all claims, "suits" and proceedings which, in [National Casualty's] opinion, may involve this policy.
>
> Unless [National Casualty] elects otherwise, the Insured shall be solely responsible for the investigation, defense, settlement and final disposition of any claim made or "suit" brought or proceedings instituted against the Insured to which this policy would apply up to the limit of the Self-Insured Retention. The Insured shall use due diligence and prudence to settle all such claims and "suits" which, in the exercise of sound judgment should be settled; provided, however, that the Insured shall not make or agree to any settlement for any sum, which would involve the limits of this insurance without the prior written approval of [National Casualty].

43. The Self-Insured Retention further states that "[National Casualty] shall have the right and opportunity to associate, at [National Casualty's] own expense, with the Insured in the defense, appeal, settlement, or control of any claim or 'suit' to which this policy applies seeking damages in excess of the Self-Insured Retention" and "[y]ou shall provide [National Casualty] quarterly reports of all claims or incidents occurring within the Self-Insured Retention including a description of each claim and amounts paid or reserved. Each report is to be submitted within twenty (20) days following the end of each quarterly period

and this shall apply in addition to the individual claim reporting requirements set forth [therein]."

44. The Policy is subject to an endorsement entitled Duties In The Event of Occurrence, Offense, Claim Or Suit Redefined, Form UT-3g (3-92), which "modifies insurance provided under the . . . Self-Insured Retention Endorsement," and which states, in part, that "[i]f a claim is made or 'suit' is brought against any Insured involving this policy, you must see to it that [National Casualty] receive[s] prompt written notice of the claim or 'suit.'"

45. The Policy defines "claim" to mean "a demand received by the Insured for money or services, including the service of suit or institution of arbitration proceedings against the Insured."

46. The Policy defines "suit" to mean, in part, "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged."

## COUNT I – DECLARATORY JUDGMENT

47. National Casualty adopts and incorporates by reference all the allegations contained in paragraphs 1 through 46 as though completely and fully set forth herein.

48. An actual, present, and existing controversy exists among the parties to this lawsuit regarding whether National Casualty must indemnify Gil under the Policy for the Final Consent Judgment entered in the Underlying Lawsuit.

49. Coverage under Coverage A for the Underlying Plaintiffs' alleged injuries is excluded by Exclusion d., Workers' Compensation And Similar Laws, because the Underlying Plaintiffs' alleged injuries constitute an "obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law."

50. To the extent Gil was Equinox's "agent" and not Equinox's "employee," he would not be an insured and, further, coverage under Coverage A for the Underlying Plaintiffs' alleged injuries is excluded by Exclusion e., Employer's Liability because the Underlying Plaintiffs' alleged injuries constitute "bodily injury" to an "'employee' of the insured arising out of and in the course of . . . [e]mployment by the insured" or "[p]erforming duties related to the conduct of the insured's business."

51. Coverage for the Final Consent Judgment entered in the Underlying Lawsuit is excluded by Exclusion b., Contractual Liability because the Final Consent Judgment constitutes damages "for which [Gil] is obligated to pay . . . by reason of the assumption of liability in a contract or agreement."

52. Coverage under Coverage A for the Underlying Plaintiffs' alleged injuries is excluded to the extent the Underlying Plaintiffs' allege injuries constitute "'bodily injury' . . . due to the rendering of or failure to render any professional service."

53. The Policy does not afford coverage for Gil for the Final Consent Judgment entered in the Underlying Lawsuit based on the breach of the Policy's condition that "the Insured shall not make or agree to any settlement for any sum, which would involve the limits of this insurance without the prior written approval of [National Casualty]."

54. The Policy does not afford coverage for Gil for the Final Consent Judgment entered in the Underlying Lawsuit based on the breach of the Policy's notice provisions.

55. In the alternative, National Casualty has no present obligation to indemnify Gil for the Final Consent Judgment entered in the Underlying Lawsuit because the Policy requires that "100% of [the $250,000] Self-Insured Retention" be paid "before this policy applies."

56. In addition to the foregoing provisions, National Casualty pleads all other conditions, terms, warranties, limitations, definitions, and exclusions of the Policy, which also may be found to be applicable as National Casualty's investigation of this matter continues, and reserves the right to amend its Complaint as additional and/or more specific information becomes available.

WHEREFORE, National Casualty respectfully requests that this Court enter a judgment declaring the rights and obligations of the parties under the Policy, including a judgment declaring that National Casualty has no obligation to indemnify Gil for the Final Consent Judgment entered in the Underlying Lawsuit and for all such further relief as justice may require.

Respectfully submitted this 16th day of December, 2021.

**PHELPS DUNBAR LLP**

BY:   /s/ Rhett Parker
Rhett C. Parker
Florida Bar No. 92505
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602-5311
Phone: (813) 472-7890
Fax: (813) 472-7570
Email: rhett.parker@phelps.com

**ATTORNEY FOR NATIONAL CASUALTY COMPANY**